UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10844-RGS

MANNY CHONG, THANE GALLO, and
ALL OTHERS SIMILARLY SITUATED,

v.

NORTHEASTERN UNIVERSITY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

October 1, 2020

STEARNS, D.J.

Manny Chong and Thane Gallo filed this putative class action against Northeastern University. By way of a Second Amended Complaint (SAC) [Dkt # 15], they allege that Northeastern breached a contract with its students (Counts I, III, and V) or, alternatively, unjustly enriched itself at its students' expense (Counts II, IV, and VI) when it retained the full amount of tuition and fees it collected for the spring semester of 2020 despite ceasing in-person instruction and closing its on-campus facilities and resources. Northeastern moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will allow the motion as to Counts I, II, IV, and VI and portions of Counts III and V. It will deny the motion as to the remaining portions of Counts III and V.

## BACKGROUND

The essential facts, drawn from the SAC and documents incorporated by reference, and viewed in the light most favorable to the plaintiffs, are as follows. Gallo is an undergraduate student in Northeastern's College of Engineering who matriculated in the fall of 2019 and expects to graduate with a Bachelor of Science degree in May of 2023. Chong is a graduate student in Northeastern's Counseling Psychology program who matriculated in the fall of 2019 and expects to graduate with a Master of Science degree in May of 2021. Before registering for courses for the spring semester of 2020, Gallo and Chong (and all similarly situated students) executed an Annual Financial Responsibility Agreement (FRA) with the university. As relevant here, the agreement provides:

> In exchange for the opportunity to enroll at Northeastern, to receive educational services, and for other valuable consideration, I agree to the following terms and conditions:
>
> . . .
>
> PAYMENT OF FEES/PROMISE TO PAY
>
> By registering for any class or receiving any service from Northeastern, I accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services. I understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement . . . in which Northeastern is providing me educational services, deferring some or all of my payment obligation for those services, and I promise to pay for

all assessed tuition, fees and other associated costs by the published or assigned due date.

Ex. A to Pl.'s Opp'n [Dkt # 33-1]; Ex. B to Pl.'s Opp'n [Dkt # 33-2]; *see also* SAC ¶ 9. The FRA does not define the term "educational services."

Gallo fulfilled his payment obligations under the FRA on January 10, 2020, when he paid Northeastern $26,210.00 in tuition, a $70.00 student activity fee, a $310.00 undergraduate student fee, a $60.00 campus recreation fee, and a $70.00 student center fee. Chong fulfilled his payment obligations in December of 2019, when he paid Northeastern $23,400.00 in tuition, a $16.00 graduate student activity fee, a $60.00 recreation fee, and a $70.00 student center fee. Gallo registered for four courses, and Chong registered for five courses. The description supplied by the Northeastern Registrar for each of these courses specified that instruction would occur "within an assigned room in specific buildings . . . on Northeastern's Boston campus." SAC ¶ 14. Through March 11, 2o2o, instruction for each of these courses did occur in person on the Boston campus.

On March 11, 2020, the university's president, Joseph Aoun, notified students that "all Spring 2020 courses offered by Northeastern would be taught online beginning March 12, 2020 for the remainder of the semester, in response to the spread of the Covid-19 virus." *Id.* ¶ 17. Northeastern also closed its on-campus facilities and resources, including its classrooms,

laboratories, library, student center, fitness centers, and First Year Learning & Innovation Center workspaces, effective March 12, 2020. No tuition-paying Northeastern student "has received instruction from Northeastern faculty in-person" or has had access to the university's on-campus facilities and resources since that date. *Id.* ¶¶ 36, 37. Chong further alleges that one of his professors ceased offering lectures to students following the switch to remote learning and instead emailed weekly notes, reducing the hands-on instruction time in the course to zero until the end of the semester.

Chong petitioned for a partial refund of the tuition and fees he had paid to Northeastern for the spring semester of 2020, citing the pedagogical inferiority of online instruction. When Northeastern failed to act on his petition or otherwise offer its students a refund, he and Gallo filed the instant putative class action. They assert six claims on behalf of three putative classes: breach of contract (Count I) or, alternatively, unjust enrichment (Count II) as to a Tuition Class, tentatively defined as "[a]ll Northeastern University students who attended one or more courses in-person for credit on a Northeastern campus between January 1, 2020 and March 11, 2020 . . . and paid tuition monies to Northeastern" for these courses; breach of contract (Count III) or, alternatively, unjust enrichment (Count IV) as to an Undergraduate Fees Class, tentatively defined as "[a]ll Northeastern

University undergraduate students who paid Northeastern a student activity fee, an undergraduate student fee, a campus recreation fee, and a student center fee on or before March 11, 2020, and who were enrolled in one or more courses for credit on a Northeastern campus between January 1, 2020 and March 11, 2020"; and breach of contract (Count V) or, alternatively, unjust enrichment (Count VI) as to a Graduate Fees Class, tentatively defined as "[a]ll Northeastern University graduate students who paid Northeastern a student activity fee, a recreation fee, and a student center fee on or before March 11, 2020, and who were enrolled in one or more courses for credit on a Northeastern campus between January 1, 2020 and March 11, 2020." *Id.* ¶¶ 27, 31, 33.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially

plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Count I, breach of contract as to the Tuition Class

Count I asserts a claim for breach of contract relative to the payment of tuition for the spring semester of 2020. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961). To meet this burden, plaintiffs allege that they "had an agreement" with Northeastern "in the form of the" FRA and that Northeastern breached this agreement "when it ceased providing in-person instruction." SAC ¶¶ 52, 55.

Northeastern argues that plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included a right to in-person instruction. The court agrees. The FRA provides for students to "pay all tuition, fees, and other associated costs" incurred as a result of "registering for any class or receiving any service from Northeastern." Ex. A to Pl.'s Opp'n; Ex. B to Pl.'s Opp'n; *see also* SAC ¶ 9. It ties the payment of

tuition to registration for courses, not to the receipt of any particular method of course instruction.

Chong and Gallo contend that in-person instruction nonetheless became part of the parties' contract when they registered for courses scheduled to "be taught within an assigned room in specific buildings" on the Boston campus. SAC ¶ 14. Plaintiffs, however, do not plead that the course descriptions provided by the Northeastern Registrar comprised part of the parties' contract. And the SAC lacks any allegation which might allow the court to reasonably infer that these descriptions were meant to be read "in conjunction with" the FRA[1] – for example, that the descriptions appear on the registration website and are part of the enrollment process itself or that students generally understand the information in the description to be definitive. *See* Pl.'s Opp'n at 5 [Dkt # 33].

---

[1] Plaintiffs allege that they could not fulfill their program requirements through online courses. They do not, however, allege that they took any courses required by their programs during the spring semester of 2020. And even if they had, they received half a semester of in-person instruction and thus did not receive "solely . . . on-line instruction" for those courses. *See* SAC ¶¶ 12, 13. In a similar vein, although plaintiffs allege that they attended courses in person on the Boston campus prior to March 12, 2020, in a manner that would be consistent with a contractual requirement, they do not actually allege that this instruction occurred as specified in the course descriptions. The court thus cannot reasonably infer the existence of a contractual entitlement to in-person instruction from the mere fact of in-person attendance.

In their oppositional briefing, plaintiffs attempt to rectify their pleading deficiencies by referencing the semester schedule that the Northeastern Registrar issued to each student after he or she completed registration for the spring semester of 2020. According to plaintiffs, these schedules "contained promises, statements, and representations concerning the 'educational services' to be provided to the student for that semester." Pl.'s Opp'n at 7. In plaintiffs' case, the schedules represented that the "educational services" plaintiffs would receive included traditional, in-person instruction for each of their courses. The court cannot consider this evidence, however, because the SAC makes no mention of any Registrar-issued spring semester schedule.

In sum, because the SAC does not plausibly establish that the parties' contract included any right to in-person instruction, plaintiffs have failed to state a claim for breach of contract. The court accordingly allows the motion to dismiss Count I.

### b. Counts III and V, breach of contract as to the Undergraduate Fees Class and the Graduate Fees Class

Counts III and V assert breach of contract relative to the payment of certain student fees. Plaintiffs allege that Northeastern breached its obligations under the FRA "when it ceased permitting access to any

Northeastern student to its campus facilities, including its student center, with no on-campus activities conducted in any of those facilities, upon information and belief, from late March 2020 onward." SAC ¶¶ 65, 75.

The FRA does not expressly create any entitlement to access on-campus facilities and resources. Because it ties the payment of fees to registration for courses and the receipt of services, however, it may implicitly create such a right. The court accordingly turns to the payment terms and description of the services received for each fee. Northeastern purports to assess the campus recreation fee "during terms a student is in classes to support and maintain current facilities and the future construction of athletic fields and facilities" and to give students "the option to gain admission to home athletic events, use the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym (fitness and pool)." *Fee Descriptions*, Ne. Univ. Student Fin. Servs., https://studentfinance.northeastern.edu/billing-payments/tuition-and-fees/fee-descriptions/ (last visited September 21, 2020); *see also* SAC ¶ 29. It purports to assess the student activity fee annually to "provide[] support for student organizations, clubs and entertainment events throughout the school year." *Id.* It purports to assess the student center fee "per in-school term to support the Curry Student Center." *Id.* Finally, it purports to assess

the undergraduate student fee per "in-school or study abroad term" to "support[] enrollment related services throughout the student's first year, including new student orientation and welcome week activities," and to "support[] subsequent enrollment services and . . . costs related to ongoing communication to students and parents." *Id.*

Because students pay the student activity fee, the student center fee, and the undergraduate student fee to "support" certain facilities during terms for which those students are enrolled in classes,[2] i.e., not to gain access to any on-campus facility or resource, plaintiffs have not stated a claim for breach of contract with respect to these fees. The court accordingly allows the motion to dismiss Counts III and V to the extent these claims are premised on payment of the student activity fee, the student center fee, or the undergraduate student fee.

Students also pay the campus recreation fee to "support" certain facilities. Payment of the campus recreation fee, however, further gives students "the option to gain admission to home athletic events" and to "use

---

[2] The fee descriptions refer generally to annual payments or payments per "in-school term." Because the fees are assessed on a per year or per term basis (i.e., not on a daily basis), and because plaintiffs presumably were still classified as in-school students for the spring semester of 2020 even after the switch to remote learning, the court declines to find that they stopped having any obligation to pay these fees after March 12, 2020.

the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym (fitness and pool)." Because plaintiffs allege that they lost the option to attend home athletic games or use fitness facilities after March 12, 2020, plaintiffs have stated a plausible claim for breach of contract with respect to the campus recreation fee. The court accordingly denies the motion to dismiss Counts III and V to the extent these claims are premised on payment of the campus recreation fee.

### c. Counts II, IV, and VI, unjust enrichment as to all classes

Counts II, IV, and VI assert claims of unjust enrichment. To assert a claim for unjust enrichment, a plaintiff must show (1) "she conferred a benefit upon the defendant," (2) "the defendant accepted the benefit," and (3) "the defendant's retention of the benefit would be inequitable without payment for its value." *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012), *aff'd*, 527 F. App'x 20 (1st Cir. 2013).

Northeastern argues that plaintiffs cannot state a claim for unjust enrichment because they have an adequate alternative remedy available to challenge its retention of tuition and fees. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment"). The court agrees. Because plaintiffs plead that they paid tuition and fees to Northeastern in accordance

11

with the terms of the FRA, plaintiffs may assert a claim for breach of contract for any unlawful retention of these funds. The court acknowledges that plaintiffs may not prevail in asserting this claim. However, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Id.* "In any event, Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006). Accordingly, the court allows the motion to dismiss Counts II, IV, and VI.

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u> as to Counts I, II, IV, and VI and the portions of Counts III and V premised on payment of any student activity fee, student center fee, or undergraduate student fee. This dismissal is without prejudice. The portions of Count III and V premised on payment of a campus recreation fee survive Northeastern's motion.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE