UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10844-RGS

MANNY CHONG, THANE GALLO, and
ALL OTHERS SIMILARLY SITUATED,

v.

NORTHEASTERN UNIVERSITY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

December 14, 2020

STEARNS, D.J.

Manny Chong and Thane Gallo filed this putative class action against Northeastern University.  By way of a Third Amended Complaint (TAC) (Dkt # 40), they allege that Northeastern breached a contract with its students (Counts I, III, and V) or, alternatively, unjustly enriched itself at its students' expense (Counts II, IV, and VI) when it retained the full amount of tuition and fees collected for the Spring semester of 2020, despite ceasing in-person instruction and closing its on-campus facilities and resources.  Northeastern moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).  For the following reasons, the court will <u>ALLOW</u> the motion in part and <u>DENY</u> it in part.

## BACKGROUND

The essential facts, drawn from the TAC and documents incorporated by reference, and viewed in the light most favorable to the plaintiffs as the nonmoving parties, are as follows.  Northeastern is a private educational institution with a main campus in Boston, Massachusetts.  Gallo is an undergraduate student who enrolled in courses at Northeastern during the Spring semester of 2020.  Chong is a graduate student who enrolled in courses at Northeastern during the Spring semester of 2020.

Before the semester began, Gallo and Chong (and all similarly situated students) executed an Annual Financial Responsibility Agreement (FRA) with the University.  Insofar as relevant here, the agreement provides:

> In exchange for the opportunity to enroll at Northeastern, to receive educational services, and for other valuable consideration, I agree to the following terms and conditions:
>
> . . .
>
> PAYMENT OF FEES/PROMISE TO PAY
>
> By registering for any class or receiving any service from Northeastern, I accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services. I understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement . . . in which Northeastern is providing me educational services, deferring some or all of my payment obligation for those services, and I promise to pay for all assessed tuition, fees and other associated costs by the published or assigned due date.

Ex. A to TAC; Ex. B to TAC.  The FRA does not explicitly define the term "educational services."  Plaintiffs allege, however, that Northeastern described the "educational services" each student could expect to receive in "numerous statements, promises, and representations in the Semester Schedule and Class Details documents" that Northeastern issued during student registration.  TAC ¶ 18.

After signing the FRA, plaintiffs registered for courses designated in Class Detail documents as having "traditional" instruction (i.e., face-to-face instruction in a classroom setting), *id.* ¶¶ 30-31, and Northeastern issued Semester Schedules specifying that instruction for their courses would occur "within an assigned room in specific buildings — Ryder Hall (as to . . . Chong), and Kariotis Hall, Hurtig Hall, Richards Hall, and Behrakis Center (as to . . . Gallo) — on Northeastern's Boston campus," *id.* ¶ 23.

For the first half of the Spring semester, instruction for plaintiffs' courses occurred in person, as specified in the Semester Schedule and Class Details documents.  On March 11, 2020, however, the University's president notified students that "all Spring 2020 courses offered by Northeastern would be taught online beginning March 12, 2020 for the remainder of the semester, in response to the spread of the Covid-19 virus."  *Id.* ¶ 45. Northeastern also closed its on-campus facilities, including its classrooms,

3

laboratories, library, student center, fitness centers, and the First Year Learning & Innovation Center workspaces, effective March 12, 2020. No tuition-paying student had access to in-person instruction or on-campus facilities and resources during the remainder of the Spring semester of 2020. Chong further alleges that one of his professors ceased offering lectures to students following the switch to remote learning and instead emailed weekly notes, reducing the hands-on instruction time in the course to zero until the end of the semester.

Chong petitioned for a partial refund of the tuition and fees he had paid to Northeastern for the Spring semester of 2020, citing the pedagogical inferiority of online instruction. When Northeastern failed to act on his petition or otherwise offer its students a refund, he and Gallo filed the instant putative class action. They assert six claims on behalf of three nominated classes: breach of contract (Count I) or, alternatively, unjust enrichment (Count II) as to a Tuition Class, tentatively defined as "[a]ll Northeastern University students who attended one or more courses in-person for credit on a Northeastern campus between January 1, 2020 and March 11, 2020 . . . and paid tuition monies to Northeastern" for these courses; breach of contract (Count III) or, alternatively, unjust enrichment (Count IV) as to an Undergraduate Fees Class, tentatively defined as "[a]ll Northeastern

University undergraduate students who paid Northeastern a student activity fee, an undergraduate student fee, a campus recreation fee, and a student center fee on or before March 11, 2020, and who registered for one or more Spring 2020 courses for credit on a Northeastern campus March 11, 2020"; and breach of contract (Count V) or, alternatively, unjust enrichment (Count VI) as to a Graduate Fees Class, tentatively defined as "[a]ll Northeastern University graduate students who paid Northeastern a student activity fee, a recreation fee, and a student center fee on or before March 11, 2020,  who registered for one or more Spring 2020 courses for credit on a Northeastern campus before March 11, 2020." *Id.* ¶¶ 59, 64, 66.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Two basic principles guide the court's analysis.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  A claim is facially plausible if its

factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Count I, breach of contract as to the Tuition Class

Count I asserts a claim for breach of contract relative to the payment of tuition for the Spring semester of 2020.[1]  "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).

Northeastern argues that plaintiffs have failed to state a claim for breach of contract because they have not sufficiently identified the basis for any contractual right to in-person instruction.  Plaintiffs respond that the contractual right to in-person instruction derives from two sources: the FRA

---

[1] The court is not convinced that plaintiffs' contract claim is merely a disguised educational malpractice claim, as Northeastern implies.  The TAC appears to challenge the mere fact of the switch from in-person to online instruction, not the *quality* of the online education Northeastern provided. *See Salerno v. Fla. S. Coll.*, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020).  And while it is possible that the measure of damages for this alleged breach will so inextricably implicate the issue of quality as to render the claim non-actionable, the court needs more information before it can make an informed assessment.

and the course registration materials.[2]  Specifically, they cite to statements in the FRA tying the payment of tuition to registration and the receipt of "educational services" and statements in plaintiffs' Semester Schedule and Class Detail documents indicating that the "educational services" they had contracted to receive for the semester would include "traditional," face-to-face instruction in physical locations on campus.[3]  Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student who read these statements could have reasonably expected that executing the FRA and registering for on campus courses would entitle them to in-person instruction.  *See Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at *15 (D.

---

[2] Northeastern maintains that the FRA and the course registration materials cannot reasonably be read together.  The court declines to resolve the issue at this juncture.  Plaintiffs allege that the documents are intertwined and form a larger educational services agreement, and these allegations are at least plausible given repeated references to the registration process in the FRA and the fact that, as a matter of common sense, students presumably would not incur any obligation to pay for "educational services" unless they registered for classes.  The court accordingly reserves for a future (post-discovery) stage the determination of whether the overarching educational services agreement pled by plaintiffs does, in fact, exist.

[3] Northeastern disputes the allegation that a student could reasonably expect the statements, promises, and representations in their Semester Schedule and Class Detail documents to guarantee the nature of the "educational services" that he or she would receive under the FRA.  For the reasons discussed in footnote 2, however, the court declines to resolve the issue as a matter of law at this juncture.  Plaintiffs' allegation is at least plausible, so it would be inappropriate to dismiss the claim prior to discovery.

Mass. Aug. 26, 2013) ("When interpreting contracts between students and their academic institutions, under Massachusetts law courts employ the standard of reasonable expectation — what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." (internal quotation marks omitted)), quoting *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000). Further factual development is needed to resolve the issue on the merits.[4] The court accordingly denies the motion to dismiss Count I.

### b. Counts III and V, breach of contract as to the Undergraduate Fees Class and the Graduate Fees Class

Counts III and V assert breach of contract claims relative to the payment of certain student fees. Plaintiffs allege that Northeastern breached its obligations under the educational services agreement "when it ceased permitting access to any Northeastern student to its campus facilities, including its student center, with no on-campus activities conducted in any of those facilities, upon information and belief, from late March 2020 onward." TAC ¶ 110.

---

[4] Other documents unavailable to the court at the motion to dismiss stage, for example, may undercut the reasonableness of any expectation of in-person instruction.

Plaintiffs do not point to any explicit language in the FRA or the registration materials creating an entitlement to access on-campus facilities and resources. Because the FRA ties the payment of fees to the receipt of services, however, the educational services agreement may implicitly create such a right. The court accordingly turns to the payment terms and description of the services received for each fee. Northeastern states that it assesses the campus recreation fee "during terms a student is in classes to support and maintain current facilities and the future construction of athletic fields and facilities," and to give students "the option to gain admission to home athletic events, use the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym (fitness and pool)." *Fee Descriptions*, Ne. Univ. Student Fin. Servs., https://studentfinance.northeastern.edu/billing-payments/tuition-and-fees/fee-descriptions/ (last visited December 4, 2020); *see also* TAC ¶ 62. It further states that it assesses the student activity fee annually to "provide[] support for student organizations, clubs and entertainment events throughout the school year." *Id.* The student center fee is described as a payment "per in-school term to support the Curry Student Center." *Id.* Finally, Northeastern purports to assess the undergraduate student fee per "in-class or study abroad term" to "support[] enrollment related services

throughout the student's first year, including new student orientation and welcome week activities," and to "support[] subsequent enrollment services and . . . costs related to ongoing communication to students and parents." *Id.*

Because students pay the student activity fee, the student center fee, and the undergraduate student fee to "support" certain facilities during terms for which those students are enrolled in classes,[5] and not to gain admission to any on-campus facility or access to a given resource (or even to support the operation of any specific service at an on-campus facility), plaintiffs have not stated a claim for breach of contract with respect to these fees.  The court accordingly allows the motion to dismiss Counts III and V to the extent these claims are premised on payment of the student activity fee, the student center fee, or the undergraduate student fee.

Students also pay the campus recreation fee to "support" certain facilities.  Payment of the campus recreation fee, however, gives students "the option to gain admission to home athletic events" and to "use the Marino

---

[5] The fee descriptions refer generally to annual payments or payments per in-class term.  Because the fees are assessed on a per year or per term basis (i.e., not daily), and because plaintiffs presumably were still classified as in-class students for the Spring semester of 2020, even after the switch to remote learning, the court declines to find that they had no obligation to pay these fees after March 12, 2020.

Fitness Center, the SquashBusters athletic facility, and the Cabot Gym (fitness and pool)." Because plaintiffs allege that they lost the option to attend home athletic games or use fitness facilities after March 12, 2020,[6] plaintiffs have stated a plausible claim for breach of contract with respect to the campus recreation fee. The court accordingly denies the motion to dismiss Counts III and V to the extent these claims are premised on payment of the campus recreation fee.

### c. Counts II, IV, and VI, unjust enrichment as to all classes

Counts II, IV, and VI assert claims of unjust enrichment. To assert a claim for unjust enrichment, a plaintiff must show (1) "she conferred a benefit upon the defendant," (2) "the defendant accepted the benefit," and (3) "the defendant's retention of the benefit would be inequitable without payment for its value." *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012), *aff'd*, 527 F. App'x 20 (1st Cir. 2013).

Northeastern argues that plaintiffs cannot, as a matter of law, state a claim for unjust enrichment because they have an adequate alternative

---

[6] Northeastern contends that it could not have breached any obligation to give students the "option" to attend home athletic games because there were no home athletic games held on campus after March 12, 2020. But this argument implicates a factual issue (whether cancelling all home athletic events deprived students of the *option* to attend home athletic games) and is therefore inappropriate for resolution at the motion to dismiss stage.

remedy available, namely, a breach of contract action.  *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment").  But unlike the Second Amended Complaint, the TAC does not rely on the existence of a single document that indisputably governs the parties' contractual relationship.  It alleges a broader educational services agreement entitling students to in-person instruction.  As Northeastern disputes the existence of any binding contract, and as plaintiffs plead unjust enrichment only to the extent the parties do not have a valid contract, it would be inappropriate for the court to find plaintiffs limited to a contractual remedy at this early stage of the litigation.  *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-141 (1st Cir. 2012).  The court accordingly declines to dismiss these counts.[7]

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u> as to the portions of Counts III, IV, V, and VI premised on payment of any student activity fee, student center fee, or undergraduate student fee.  It is <u>DENIED</u> in all other respects.  Counts I and II and the portions of Counts III, IV, V,

---

[7] The court notes, however, that the unjust enrichment claims only survive to the extent the contract claims survive.  It thus dismisses the portions of Counts IV and VI premised on payment of a student activity fee, student center fee, or undergraduate student fee.

and VI premised on payment of a campus recreation fee also survive Northeastern's motion.

SO ORDERED.

Richard G. Stearns
UNITED STATES DISTRICT JUDGE