**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MANNY CHONG,<br>THANE GALLO,<br><br>and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>NORTHEASTERN UNIVERSITY,<br><br>*Defendant*. | Civil Action No. 1:20-10844-RGS |
| MANISHA BAHRANI and DUNCAN LEGGET, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>NORTHEASTERN UNIVERSITY,<br><br>*Defendant*. | Civil Action No. 1:20-10946-RGS |

**DEFENDANT'S CONSOLIDATED MEMORANDUM IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


**INTRODUCTION**.......................................................**1**

**UNDISPUTED MATERIAL FACTS** ....................................2

**PLAINTIFFS' ALLEGATIONS**........................................11

I. Plaintiffs Chong and Gallo........................................11

II. Plaintiffs Bahrani and Legget ....................................12

**ARGUMENT**.............................................................13

I. THE DELIVERY OF SERVICES PROVISION BARS PLAINTIFFS' CONTRACT CLAIMS. ..........................................................13

A. The Delivery of Services Provision Both Limits Northeastern's Liability and Forecloses Any Reasonable Expectation of Continued In-Person Instruction and Campus Access...........................................13

B. The Delivery of Services Provision Is Enforceable. ...................17

C. The Delivery of Services Provision Bars Plaintiffs' Unjust Enrichment Claims.................................................................23

**CONCLUSION** ..........................................................24

# TABLE OF AUTHORITIES

## Cases

*Ajemian v. Yahoo!, Inc.*,
83 Mass. App. Ct. 565 (2013)....................18

*Baetjer v. New England Alcohol Co.*,
319 Mass. 592 (1946)....................19

*Capriole v. Uber Techs., Inc.*,
No. 1:19-cv-11941-IT, 2020 WL 1536648 (D. Mass. Mar. 31, 2020)....................18

*Cloud v. Trs. of Bos. Univ.*,
720 F.2d 721 (1st Cir. 1983)....................13

*Cooper v. Charter Comm's., Inc.*,
945 F. Supp. 2d 233 (D. Mass. 2013), *rev'd*, 760 F.3d 103 (1st Cir. 2014)....................19

*Desrosiers v. Governor*,
486 Mass. 369 (2020)....................23

*Doe v. Brandeis Univ.*,
177 F. Supp. 3d 561 (D. Mass. 2016)....................23

*Doe v. Harvard Univ.*,
462 F. Supp. 3d 51 (D. Mass. 2020)....................13

*Dukes Bridge LLC v. Beinhocker*,
856 F.3d 186 (1st Cir. 2017)....................22

*Essigmann v. W. New England Coll.*,
11 Mass. App. Ct. 1013 (1981)....................15

*Gociman v. Loyola Univ. of Chicago*,
No. 20-C-3116, 2020 WL 243573 (N.D. Ill. Jan. 25, 2021)....................16

*Hassan v. Fordham Univ.*,
No. 20-CV-3265-KMW, 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021)....................15

*Hebert v. Vantage Travel Serv.*,
444 F. Supp. 3d 233 (D. Mass. 2020)....................17, 19

*Hunter v. Skate III*,
No. 9604, 1999 WL 1080326 (Mass. App. Div. Nov. 23, 1999)....................20

*Kauders v. Uber Techs., Inc.*,
486 Mass. 557 (2021)....................18, 22

*Lafayette Place Assocs. v. Bos. Redevelopment Auth.*,
427 Mass. 509 (1998) ....................19

*Lexington Ins. Co. v. All Regions Chem. Labs, Inc.*,
419 Mass. 712 (1995) ....................19

*Linder v. Occidental College*,
No. CV 20-8481-JFW, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ....................16

*Machado v. System4, LLC*,
471 Mass. 204 (2015) ....................22

*Mangla v. Brown Univ.*,
135 F.3d 80 (1st Cir. 1998) ....................14

*Nicholas Zeo, Inc. v. Ry. Express Agency, Inc.*,
317 Mass. 374 (1944) ....................20

*Polito v. Sch. Comm. of Peabody*,
69 Mass. App. Ct. 393 (2007) ....................19

*Schaer v. Brandeis Univ.*,
432 Mass. 474 (2000) ....................14

*Shayeb v. Holland*,
321 Mass. 429 (1947) ....................19

*Showell v. Trs. of Bos. Univ.*,
No. 935815, 1994 WL 879638 (Mass. Super. Ct. June 30, 1994) ....................14

*Sonoiki v. Harvard Univ.*,
No. 19-cv-12172, 2020 WL 3416516 (D. Mass. June 22, 2020) ....................23

*Walker v. President & Fellows of Harvard Coll.*,
840 F.3d 57 (1st Cir. 2016) ....................13

*Wickberg v. Lyft*,
356 F. Supp. 179 (D. Mass. 2018) ....................18

*Zapatha v. Dairy Mart, Inc.*,
381 Mass. 284 (1980) ....................22

*Zhao v. CIEE, Inc., et al.*,
No. 2:20-cv-00240-LEW, 2020 WL 5171438 (D. Me. Aug. 31, 2020) ....................17

**Other Authorities**

*Commonwealth of Massachusetts, Office of the Governor*,
*COVID Order No. 13* (March 23, 2020) ....................17

# INTRODUCTION

In mid-March 2020, in response to the COVID-19 pandemic and the mandates of state and public health authorities, Northeastern University ("Northeastern" or the "University") shifted to online instruction for the final five weeks of the Spring 2020 semester. Plaintiffs assert that this action either amounts to a breach of contract entitling them to a partial refund of their tuition payments, or, alternatively, has unjustly enriched the University. However, both claims are foreclosed by (1) the express terms of Northeastern's Undergraduate Student Handbook and Graduate Catalog, to which each Plaintiff explicitly agreed, and (2) the limitations on tuition refunds incorporated by reference into the Student Financial Responsibility Agreement ("SFRA"), which each Plaintiff also executed. Both the Handbook and Catalog contain a Delivery of Services provision that both vests discretion in Northeastern to make a "substitution of alternatives" for scheduled classes and academic activities and bars liability when educational services are interrupted for reasons beyond Northeastern's reasonable control, such as natural elements and acts of governmental authorities. Moreover, the University's tuition refund schedule, which is expressly incorporated by reference into the SFRA, allows for student refunds only in the event of a student withdrawal within the first five weeks of any academic semester.

While Plaintiffs affirmatively alleged in their motion to dismiss briefing that they each signed the SFRA,[1] they asserted (although in briefs rather than sworn statements) that they never reviewed nor signed any documents containing the Delivery of Services provision, and thus cannot reasonably be expected to have agreed to its contents.[2] These latter assertions are false as a matter

---

[1] *See Chong*, Dkt. No. 46 at 5; *Bahrani*, Dkt. No. 57 at 12 n.15.

[2] *See Chong* Dkt. No. 46 at 22; *Bahrani* Dkt. No. 57 at 21.

of indisputable fact. As set forth below, Northeastern in fact required the Plaintiffs to certify that they had read, understood, and agreed to abide by the Undergraduate Student Handbook, Graduate Catalog, and the policies set forth therein, including the Delivery of Services clause. Northeastern's electronic logs confirm that each Plaintiff did so.

In sum, the Delivery of Services provision, which is binding and enforceable, and to which the Plaintiffs explicitly agreed, belies any reasonable expectation of in-person instruction during a pandemic and, in any case, bars claims due to events beyond Northeastern's reasonable control. Accordingly, Northeastern is entitled to judgment as a matter of law.

## UNDISPUTED MATERIAL FACTS

a. All Plaintiffs Executed a Student Financial Responsibility Agreement Incorporating Northeastern's Limited Tuition Refund Policy.

Each Plaintiff in this case executed a SFRA with Northeastern prior to the Spring 2020 semester.[3] In the SFRA, Plaintiffs specifically agreed that they would be "responsible for paying all or a portion of tuition and fees in accordance with the published withdrawal refund schedule posted at the Withdrawal/Leave of Absence page and/or any other policy specific to my program or department, which I am responsible for reviewing and understanding." SOF ¶ 2. The linked Withdrawal/Leave of Absence page, whose "terms [were] incorporated into [the SFRA] by" reference, *id*., did not provide for refunds outside the context of a student's withdrawal. In particular, the page explained that the University would provide a complete refund if a student withdrew in the first three weeks of the semester, a partial refund in the case of withdrawal in the fourth or fifth week, and no refund after the fifth week. SOF ¶ 5.

[3] *See* Defendant's Statement of Material Facts in Support of Motion for Summary Judgment ("SOF"), ¶¶ 41, 50, 75, 87.

Northeastern provides its students with access to an online student portal called *myNortheastern*. SOF ¶ 6. Through this portal, Northeastern students register for classes, view their grades, and manage the various aspects of their student experience. SOF ¶ 7. Plaintiffs were required to execute the SFRA in order to remove a "block" on their use of the *myNortheastern* application. SOF ¶¶ 8-9.

b. Northeastern Required Plaintiffs to Certify That They Agreed to a Delivery of Services Provision Reserving Northeastern's Rights and Limiting its Liability.

The Undergraduate Student Handbook and Graduate Catalog for the 2019-2020 academic year each contained a substantially similar Delivery of Services provision. SOF ¶¶ 12, 52. The provision in the Undergraduate Student Handbook provided:

> DELIVERY OF SERVICES. Northeastern University assumes no liability for the delay or failure in providing educational or other services, programs, or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by University employees or others, damage by natural elements, and acts of public authorities. The University will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the University to liability.
>
> Northeastern University reserves the sole right to promulgate and change rules and regulations, policies, and procedures and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; written materials, including, but not limited to, this handbook; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the University will give whatever notice is reasonably practical.

SOF ¶ 12. Affidavit of Madeleine Estabrook ("Estabrook Aff."), Ex. A.

The Delivery of Services provision in the Graduate Catalog likewise provided:

> Delivery of Services. Northeastern University assumes no liability for delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by university employees or others, damage by natural elements, and acts of public

> authorities. The university will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the university to liability.
>
> Northeastern University reserves the sole right to promulgate and change rules and regulations and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the university will give whatever notice is reasonably practical.

SOF ¶ 52; Affidavit of Laura Andrade ("Andrade Aff."), Ex. B.

As with the SFRA, Northeastern blocked access to the University's online student portal, *myNortheastern*, until undergraduate students reviewed and indicated their "accept[ance]" of the Undergraduate Student Handbook and graduate students indicated their "accept[ance]" of the Graduate Catalog. Specifically, to clear the block, Northeastern required students to (among other actions) certify that they had read, understood, and agreed to abide by the policies set out in Northeastern's Undergraduate Student Handbook, and Graduate Catalog, as applicable, including the above-described Delivery of Services provision. SOF ¶¶ 13-29, 53-71.

c. <u>Plaintiffs Chong, Gallo, Bahrani, and Legget All Certified that They Read, Understood, and Agreed to Abide by the Undergraduate Student Handbook or Graduate Catalog</u>.

*i. The Handbook and Catalog Portal Block.*

Plaintiffs Chong, Gallo and Legget were all enrolled at Northeastern for the entire 2019-2020 academic year. SOF ¶¶ 32-33, 42, 81. Their portal block for the Catalog (as to Mr. Chong) and Handbook (as to Messrs. Gallo and Legget) went into place on August 26, 2019. SOF ¶¶ 36, 46, 84. Plaintiff Bahrani commenced her program at Northeastern in the Spring 2020 semester, for which the portal block was put in place on December 20, 2019. SOF ¶ 77. Below is a screenshot showing how a student's *myNortheastern* entry page appeared once the block was in place,

with black circle added:




SOF ¶¶ 16, 56. In order to clear this block and access the *myNortheastern* portal, Plaintiffs Chong, Gallo, Bahrani and Legget each had to "Take Action" on all of the above items marked with a "Take Action" link. SOF ¶¶ 17, 57.

The "Complete Student Handbook and Code of Conduct Requirement" item, indicated with the black circle, required students to certify that they read, understood, and agreed to abide by the policies set out in Northeastern's Undergraduate Student Handbook and Graduate Catalog. SOF ¶¶ 21, 61. To complete this certification, each Plaintiff had to click on the red "Take Action"

link next to the "Complete Student Handbook and Code of Conduct Requirement" item. SOF ¶¶ 19, 59. Clicking on that link brought the student to the following page, with red arrow added:

myNortheastern

Student Handbook and Code of Student Conduct

Listed below are links for the Student Handbook and the Code of Student Conduct, which includes a link to the Academic Integrity policy, and applies to ***all enrolled students on and off campus.*** Those who violate the Code are subject to sanctions as determined by the Office of Student Conduct and Conflict Resolution. The University community expects all members to hold themselves accountable, individually and collectively, and requires adherence to the standards set forth by the Code.

The list of academic regulations, the Code of Student Conduct, and the Academic Integrity Policy may be found in student handbooks. All students are responsible for knowing the content of their respective handbooks. Physical copies of the Undergraduate Handbook are available at the Information Desk in the Curry Student Center and the Library Reserve Desk.

- Undergraduate Student Handbook
- Graduate Handbook
- Code of Student Conduct

School of Law students should contact the Office of Academic and Student Affairs for their Student Handbook.

By selecting the ACCEPT button below you acknowledge you have been notified of the availability of the Student Handbook, Northeastern's Code of Student Conduct, and the Academic Integrity Policy, have read them, understand their meaning and agree to abide by the policies set forth.

This is a required action to regain access to myNortheastern services.

Accept

SOF ¶¶ 20, 60. To complete the required certification on this page, each Plaintiff had to then click "ACCEPT." SOF ¶¶ 22, 62. As indicated by the red arrow, the page informed each Plaintiff that:

> By selecting the ACCEPT button below you acknowledge you have been notified of the availability of the Student Handbook, Northeastern's Code of Student Conduct, and the Academic Integrity Policy, have read them, understand their meaning and <u>agree to abide by the policies set forth</u>.

SOF ¶¶ 21, 61 (emphasis added).

This page also provided hyperlinks to each of the relevant documents, notified students they could view hard copies at the student center or the library, and indicated that "[a]ll students are responsible for knowing the content of their respective handbooks." SOF ¶¶ 23, 63. To access

the documents electronically, Plaintiffs could click on the bullet points titled "Undergraduate Student Handbook" and "Graduate Handbook."[4] *Id.* ¶¶ 24, 64.

*ii. The "Undergraduate Student Handbook" Link.*

Clicking on the *myNortheastern* link titled "Undergraduate Student Handbook" brought Plaintiffs to a page on Northeastern's Office of Student Conduct and Conflict Resolution website titled "Code of Student Conduct." SOF ¶ 25. This page contained the most recent version of the Undergraduate Student Handbook. SOF ¶¶ 26. Below is a screenshot showing how this page appeared to Plaintiffs, with red arrow added:




SOF ¶ 25.

---

[4] The document referenced is in fact the Graduate Catalog, not a graduate handbook. Northeastern had no document entitled graduate student "handbook." SOF ¶ 65. Clicking the link took the user directly to the Graduate Student Catalog. SOF ¶ 66.

Clicking on the link for the "2019-2020 Student Handbook" brought Plaintiffs to a separate page containing a Portable Document Format, or PDF, of Northeastern's 2019-2020 Undergraduate Student Handbook. SOF ¶ 28. The Delivery of Services provision appears on page sixty-nine of that document in the form reflected below:

ADDITIONAL INFORMATION

# Additional Information

## ACCREDITATION

Northeastern University is accredited by the NECHE, New England Commission of Higher Education.

## DELIVERY OF SERVICES

Northeastern University assumes no liability for the delay or failure in providing educational or other services, programs, or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by University employees or others, damage by natural elements, and acts of public authorities. The University will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the University to liability.

Northeastern University reserves the sole right to promulgate and change rules and regulations, policies, and procedures and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; written materials, including, but not limited to, this handbook; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the University will give whatever notice is reasonably practical.

Northeastern University will endeavor to make available to its students a fine education and a stimulating and congenial environment. However, the quality and rate of progress of an individual's academic career and professional advancement upon completion of a degree or program are largely dependent on their own abilities, commitment, and effort. In many professions and occupations, there are also requirements imposed by federal and state statutes and regulatory agencies for certification or entry into a particular field. These requirements may change while a student is enrolled in a program and may vary from state to state or country to country. Although the University stands ready to help its students find out about requirements and changes in them, it is the student's responsibility to initiate the inquiry.

## EQUAL OPPORTUNITY POLICY

- Northeastern University strictly prohibits discrimination or harassment on the basis of race, color, religion, religious creed, genetics, sex, gender identity, sexual orientation, age, national origin, ancestry, veteran or disability status in admission to, access to, treatment in, or employment in its programs and activities. In addition, Northeastern University will not condone any form of sexual harassment. Resources about the University's nondiscrimination policies and its grievance procedures are available in the OUEC, 125 Richards Hall, or online at northeastern.edu/titleix.

Additional Information | 69

SOF ¶ 29.

*iii. The "Graduate Handbook" Link.*

The *myNortheastern* link titled "Graduate Handbook" on the "Code of Student Conduct"

page brought Plaintiffs directly to the General Regulations section of the Graduate Catalog web-site. SOF ¶ 66. Below is a screenshot showing how this page appeared, with red arrow added:







# GENERAL REGULATIONS

This is an archived copy of the 2019-2020 catalog. To access the most recent version of the catalog, please visit http://catalog.northeastern.edu.

Review the general regulations that follow as well as all other regulations or limitations included throughout this catalog. Your success at Northeastern depends, in part, on understanding your rights and fulfilling your responsibilities.

## Legal Rights and Responsibilities

### Grievance Procedure for Disabled Students

It is the policy of Northeastern University to comply with all laws governing access by and discrimination against disabled students. Accordingly, any student who believes that there has been a violation of these laws is encouraged to discuss the matter with the director of the Disability Resource Center and other persons identified by the director, or with the director of the Office of Institutional Diversity and Equality, to resolve the matter in a prompt and equitable manner. If such discussions do not resolve the matter, the student may then initiate a grievance by taking the steps outlined below.

1. All grievances made by students on the basis of being disabled are considered as being made to the president of the university.
2. In the case of a grievance, the student should discuss the objection with the individual responsible for the office or department where the objection was initially raised.
3. If not satisfied, the student should discuss the objection with the dean of the college or director under which the department falls.
4. If the grievance is not satisfactorily resolved, the student should complete a grievance form and file a written request for a formal hearing with the Grievance Committee for Disabled Students. The request should be filed with the vice president for student affairs. Upon receipt of a written request for a formal hearing, the grievance committee (including one faculty member from the student's college, one faculty member not from the student's college, one representative from the Disability Resource Center, a representative from the Office of Institutional Diversity and Equality, the vice president for student affairs or a designee, and another administrator not from student affairs) must hold a hearing within three calendar weeks. The grievance committee must allow a full and fair opportunity for the presentation of evidence relevant to the reason(s) for the hearing request and must render a decision in writing to the requesting student within one week of the conclusion of the hearing. The director of the Office of Institutional Diversity and Equality is compliance officer for Section 504 of the Rehabilitation Act of 1973.

### Grievance Procedure—Sexual Harassment

No employee, agent, supervisory personnel, or faculty member shall exercise his or her responsibilities or authority in such manner as to make submission to "sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature" as an explicit or implicit term or condition of evaluation, employment, admission, advancement, or reward within the university. Neither shall any employee, agent, supervisory personnel, or faculty member make submission to or rejection of such conduct the basis for employment or academic decisions affecting any employee or student. Neither shall any employee, agent, supervisory personnel, or faculty member conduct himself or herself with respect to verbal or physical behavior of a sexual nature where such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or creating an intimidating, hostile, or offensive work or classroom environment.

Though sexual harassment will not be tolerated, the university recognizes that it is difficult to regulate emotional relationships between consenting adults. However, a consensual relationship may be suspect in instances in which one of the individuals has authority over the other. Therefore, no faculty or employee involved romantically or sexually with a student may teach or supervise that person either individually or as part of a group in any activity connected to the university.

*Id.*

Like the Undergraduate Student Handbook, the Graduate Catalog contained the Delivery

of Services provision, which was located in the Graduate Catalog's appendix and appeared in this form:



Northeastern University
Course Catalog

Search catalog

2019-2020 Edition

PRINT OPTIONS

Home / Graduate / Appendix / General Information

Undergraduate
College of Professional Studies Undergraduate
Graduate
General Admission and Transfer Credit
Information for Entering Students
College Expenses
University-Wide Academic Policies and Procedures
PhD Programs
College of Arts, Media and Design
D'Amore-McKim School of Business
Khoury College of Computer Sciences
College of Engineering
Bouvé College of Health Sciences
School of Law
College of Professional Studies
College of Science
College of Social Sciences and Humanities
Faculty
Appendix
University Leadership
Governing Boards and Officers of Northeastern
Statements of Accreditation and State Authorization

GENERAL INFORMATION

This is an archived copy of the 2019-2020 catalog. To access the most recent version of the catalog, please visit http://catalog.northeastern.edu.

The *Northeastern University Catalog* contains the university's primary statements about approved academic programs and degree requirements, as authorized by the president or the Board of Trustees.

The *Northeastern University Catalog* contains current information about the university calendar, admissions, degree requirements, fees, and regulations; however, such information is not intended and should not be regarded to be contractual.

*Accreditation.* Northeastern University is accredited by the New England Commission of Higher Education, Inc.

*Delivery of Services.* Northeastern University assumes no liability for delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by university employees or others, damage by natural elements, and acts of public authorities. The university will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the university to liability.

Northeastern University reserves the sole right to promulgate and change rules and regulations and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the university will give whatever notice is reasonably practical.

Northeastern University will endeavor to make available to its students a fine education and a stimulating and congenial environment. However, the quality and rate of progress of an individual's academic career and professional advancement upon completion of a degree or program are largely dependent on his or her own abilities, commitment, and effort. In many professions and occupations, there are also requirements imposed by federal and state statutes and regulatory agencies for certification or entry into a particular field. These requirements may change while a student is enrolled in a program and may vary from state to state or country to country. Although the university stands ready to help its students find out about requirements and changes in them, it is the student's responsibility to initiate the inquiry.

SOF ¶ 71.

*iv. Records of Plaintiffs Chong, Gallo, Bahrani, and Legget's Certifications.*

Northeastern retains digital records of when a student clicks "Accept" on the *myNortheastern* portal to certify that the student read, understood, and agreed to abide by, as applicable, the Undergraduate Student Handbook, the Graduate Catalog, and the policies set forth therein. SOF ¶¶ 30, 72. Northeastern's internal records indicate that the four named Plaintiffs in the above-captioned actions clicked the "Accept" button on the following dates and times.

- Man chung Chong clicked the "Accept" button on September 3, 2019, at 6:58 PM;
- Duncan Legget clicked the "Accept" button on September 10, 2019 at 10:22 AM;
- Thane Gallo clicked the "Accept" button on October 9, 2019, at 6:58 PM; and
- Manisha Bahrani clicked the "Accept" button on January 2, 2020, at 3:16 PM.

SOF ¶¶ 37, 47, 78, 85.

Messrs. Chong, Gallo, and Legget thus agreed to the Delivery of Services clause before they registered for classes for the Spring 2020 semester in November 2019.[5] Ms. Bahrani first registered for courses on December 1 and December 5, 2019, before the block was put in place for students commencing their studies in the Spring 2020 semester. SOF ¶ 76. When she clicked the "Accept" button relating to the graduate catalog on January 2, 2020, she did so before classes for that semester had commenced. SOF ¶ 79. If she had deemed the Delivery of Services clause or any other term of the graduate catalog to be unsatisfactory at that time, she could have withdrawn for a full refund. SOF ¶ 80.

## PLAINTIFFS' ALLEGATIONS

### I. Plaintiffs Chong and Gallo

In their Third Amended Class Action Complaint ("TAC"), Plaintiffs Chong and Gallo allege that they made an "educational services agreement" pursuant to which they "contracted for Northeastern to provide educational services to [them] during the Spring 2020 semester in an in-person format." *See, e.g.*, TAC ¶ 27. Messrs. Chong and Gallo contend that this "educational services agreement" was created when students signed the SFRA and thereafter registered for courses for the Spring 2020 term. *Id.* at ¶ 12.

[5] Mr. Gallo registered himself for only one course for the Spring 2020. SOF ¶ 39. The Registrar's Office placed him into his remaining courses based on his engineering major requirements. SOF ¶ 38.

## II. Plaintiffs Bahrani and Legget

In their Second Amended Class Action Complaint ("SAC"), Plaintiffs Bahrani and Legget allege that they entered into "binding contracts" with Northeastern pursuant to which they paid "tuition and fees in exchange for on-campus, in-person educational services and access to on-campus facilities, events, and services." SAC ¶ 125. Ms. Bahrani and Mr. Legget claim that a "meeting of the minds and binding agreement [was] created by" Northeastern's provision of in-person learning and access to campus facilities from the beginning of the Spring 2020 semester through March 12, 2020, as well as through:

> Northeastern's demand of payment of tuition and fees (which specifies the tuition for the in-person program in which the student is enrolled and specific fees demanded of each student) and the records within Northeastern's registration system which set out the meeting places and times and time period for each course as well as the courses the student selects.

*Id.* ¶¶ 126, 131.[6] Ms. Bahrani and Mr. Legget allege that this "demand of payment" is reflected in a student's "statement of account." *Id.* ¶¶ 32-34; *see id.* SAC Ex. A.

Plaintiffs Bahrani and Legget also allege that, through the SFRA, Northeastern "expressly connects" the payment of tuition and fees to the receipt of "educational services" and the ability of students to register for courses. SAC ¶ 127.[7] They contend that because the SFRA does not

---

[6] Plaintiffs Legget and Bahrani also claim that an "implied contract for the provision of in-person courses and access to campus facilities, events, and resources, as well as to housing for the full Spring 2020 semester" was created by "(1) Northeastern's offer of courses with a designated meeting time and physical location and charging of fees that Northeastern describes as paying for access to campus facilities, events, and resources, [and] (2) Plaintiffs' and the Class' acceptance of Northeastern's offer by paying tuition and fees and registering for courses Northeastern designated as in-person." SAC ¶ 147.

[7] The SFRA also provides that "[b]y registering for any class or receiving any service from Northeastern, I [*i.e.*, the Northeastern student] accept full responsibility to pay all tuition, fees, and other associated costs assessed as a result of my registration and receipt of services." SAC ¶ 127.

"set forth the specific educational or other services Northeastern promises to provide or amounts that Northeastern will charge," the terms of the "contract" are supplied by "Northeastern's website pages describing tuition and fees, invoices, and billing and payment systems, and its representations in its registration system as to the specific courses (and their format, location, and start and end dates)." *Id.* ¶ 129; *see id.* SAC Ex. B. Plaintiffs also allege that "other materials," including "numerous pages" of "Northeastern's website," purportedly reflect Northeastern's "expectation" that it would provide in-person instruction and access to campus facilities. SAC ¶ 130 (emphasis added). Elsewhere, Plaintiffs Bahrani and Legget allege that Northeastern's "course catalogs" and "course selection materials" distinguish between in-person, online or hybrid (*i.e.*, having both in-person and online elements) teaching formats and therefore constitute an "offer" to provide courses solely in the designated format. *See id.* ¶¶ 69, 132.

## ARGUMENT

### I. THE DELIVERY OF SERVICES PROVISION BARS PLAINTIFFS' CONTRACT CLAIMS.

#### A. The Delivery of Services Provision Both Limits Northeastern's Liability and Forecloses Any Reasonable Expectation of Continued In-Person Instruction and Campus Access.

Under Massachusetts law, the relationship between student and university is essentially contractual in nature. *See, e.g.*, *Cloud v. Trs. of Bos. Univ.*, 720 F.2d 721, 724 (1st Cir. 1983); *Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 65 (D. Mass. 2020). In reviewing a breach of contract claim against a university, courts apply a reasonable expectation standard that may consider a university's representations in its catalogs, handbooks, registration materials, brochures, and other publications. *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 62-63 (1st Cir. 2016) (rejecting student's breach of contract claim because student could not have reasonably expected that the words in the Student Handbook had a meaning different than their "plain meaning");

*Schaer v. Brandeis Univ.*, 432 Mass. 474, 478-79 (2000) (affirming dismissal on its face of claim of breach of contract where handbook provisions did not support claim); *Showell v. Trs. of Bos. Univ.*, No. 935815, 1994 WL 879638, at *3 (Mass. Super. Ct. June 30, 1994) (rejecting breach of contract claim regarding university's grading policy where catalog expressly granted the university the right to change curriculum requirements); *see also Mangla v. Brown Univ*., 135 F.3d 80, 83 (1st Cir. 1998) (explaining, under Rhode Island law, that university could "reasonably expect students to be aware" of language in school catalog noting "caveat").

In denying portions of Northeastern's motion to dismiss the TAC of Messrs. Chong and Gallo, this Court held that those Plaintiffs had plausibly alleged the existence of an "educational services agreement" composed of the SFRA and documents utilized in the registration process, which might give rise to a "reasonable expectation" of in-person instruction.[8] This Court specifically noted, however, that additional documents, on a more complete record, might foreclose any such reasonable expectation.[9]

The Delivery of Services provision contains two separate sub-clauses that are relevant here: (i) a reservation of rights clause, which provides that Northeastern may "make changes of any nature" and make a "substitution of alternatives" to its scheduled courses and academic activities; and (ii) a force majeure clause, which provides that Northeastern assumes no liability when educational and other services are interrupted for reasons beyond the University's reasonable control. These provisions bar Plaintiffs' contract claims in two distinct and independent ways.

---

[8] *Chong* Dkt. No. 57 at 7.

[9] *Id.* at 8 n.4.

a. The Reservation of Rights Clause Prevents Plaintiffs From Establishing a Reasonable Expectation to Uninterrupted In-Person Instruction or Access to Campus Facilities at all Times.

First, the reservation of rights clause provides:

> Northeastern University reserves the sole right to promulgate and change rules and regulations and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the university will give whatever notice is reasonably practical.

SOF ¶¶ 12, 52.

All of the Plaintiffs *expressly agreed* to the reservation of rights clause in the Delivery of Services provision. SOF ¶¶ 37, 47, 78, 85. This provision plainly precludes any reasonable expectation that Northeastern ever agreed (i) to provide its educational services in an exclusively in-person format; and (ii) that students would be entitled to continued access to campus facilities during a pandemic. The clause contemplates exactly the sort of "changes" as occurred when Northeastern transitioned classes online in the face of the pandemic.

Furthermore, Plaintiffs explicitly agreed to Northeastern's refund policy, which prohibits a refund in these circumstances. Indeed, that policy clearly offers refunds only up to five weeks into the semester, a period that had well expired by mid-March 2020. SOF ¶ 5. Accordingly, there can be no claim that, by making such changes without providing a refund, Northeastern breached a contract. *See Essigmann v. W. New England Coll.*, 11 Mass. App. Ct. 1013, 1014 (1981) (rejecting breach of contract claim by student where school catalog expressly reserved college's right to withdraw course offerings); *see also Hassan v. Fordham Univ.*, No. 20-CV-3265-KMW, 2021 WL 293255, at *6 (S.D.N.Y. Jan. 28, 2021) (dismissing claim for tuition refund based on catalog ref-

erences to location of instruction where catalog did not relinquish authority to alter course modalities); *Gociman v. Loyola Univ. of Chicago*, Case No. 20-C-3116, 2020 WL 243573, at *4 (N.D. Ill. Jan. 25, 2021)(dismissing tuition refund class action complaint where catalog reserved right to change "curriculum, course structure and content" which was "plainly inconsistent" with "an obligation to provide only in-person instruction"); *Linder v. Occidental College*, No. CV 20-8481-JFW (RAOx), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) (same where college expressly reserved right to modify course services).

b. The Force Majeure Clause Protects Northeastern from Liability for Alterations to its Services due to COVID-19.

The Delivery of Services provision also has a force majeure clause that forecloses liability in a second, independent way. That clause provides:

> Northeastern University assumes no liability for delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by university employees or others, damage by natural elements, and acts of public authorities. The university will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the university to liability.

SOF ¶¶ 12, 52 (emphasis added).

This language plainly encompasses Plaintiffs' claims. Indeed, Plaintiffs concede that Northeastern limited access to its physical campus and moved to online instruction due to the COVID-19 pandemic, SAC ¶ 2, TAC ¶ 45, which is obviously a "cause[] beyond its reasonable control." More specifically, Northeastern's decision was in response to both "*damage by natural elements*"—the pandemic itself—and "*acts of public authorities*"—the Essential Services Orders

issued by the Massachusetts Governor Charles D. Baker,[10] which expressly barred Northeastern from providing in-person education and access to its campus facilities for the period between March 23, 2020 and May 18, 2020. The plain language of the force majeure clause necessarily shields Northeastern from liability for Plaintiffs' contract claims as a matter of law. *See Hebert v. Vantage Travel Serv.*, 444 F. Supp. 3d 233, 243 (D. Mass. 2020) (force majeure clause precluded liability of tour operator for mechanical failure of cruise boat); *see also Zhao v. CIEE, Inc., et al.*, No. 2:20-cv-00240-LEW, 2020 WL 5171438, at *3-4 (D. Me. Aug. 31, 2020) (dismissing tuition refund class action based on disruption from coronavirus pandemic where force majeure clause foreclosed claim for a "refund-no-matter-what").

**B. The Delivery of Services Provision Is Enforceable.**

In their motion to dismiss briefing, Plaintiffs collectively advanced four arguments against the enforceability of the Delivery of Services provision, all of which fail.

1. <u>Plaintiffs explicitly agreed to the Delivery of Services provision</u>.

First, Plaintiffs asserted in their pleadings that they never agreed to nor read the Delivery of Services provision. *Bahrani*, Dkt. No. 57 at 21; *Chong* Dkt. No. 46 at 22. As explained above, however, this is not true as a matter of indisputable fact. Indeed, Northeastern's electronic logs demonstrate that all four Plaintiffs individually certified that they read, understood, and agreed to abide by the University's Undergraduate Student Handbook or Graduate Catalog, as applicable, and the policies contained therein, including the Delivery of Services provision. SOF ¶¶ 37, 47, 78, 85.

---

[10] *See* Commonwealth of Massachusetts, Office of the Governor, COVID-19 Order No. 13 (March 23, 2020), *available at* https://www.mass.gov/doc/march-23-2020-essential-services-and-revised-gatherings-order/download (emphases added).

Under Massachusetts law, online agreements are enforceable if the provisions were "'reasonably communicated and accepted.'" *Kauders v. Uber, Techs., Inc.*, 486 Mass. 557, 572 (2021) (citing *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 573 (2013)); *see also Capriole v. Uber Techs., Inc.*, No. 1:19-cv-11941-IT, 2020 WL 1536648, at *4 (D. Mass. Mar. 31, 2020); *Wickberg v. Lyft*, 356 F. Supp. 179, 182-85 (D. Mass. 2018). Here, the SFRA expressly stated that all Northeastern students, including Plaintiffs, were "responsible for reviewing and understanding" the tuition refund schedule, which indicated that Northeastern would provide no refunds after five weeks into any academic semester. SOF ¶ 2. The University likewise required students to certify that they had read, understood, and agreed to abide by the policies in the Undergraduate Student Handbook and Graduate Catalog. SOF ¶¶ 10, 51. Acceptance was not passive—students had to affirmatively click through the above-described webpages to indicate their assent. SOF ¶¶ 12-29, 52-71. By executing the SFRA and clicking "I ACCEPT" in this manner, Plaintiffs reasonably manifested their assent to the terms of the SFRA and the Undergraduate Student Handbook and Graduate Catalog, as applicable.

2. <u>The Delivery of Services provision is contractual</u>.

Second, Plaintiffs have argued that the Delivery of Services provision in the Graduate Catalog is "not . . . contractual" and therefore has no legal effect. *Bahrani*, Dkt. No. 57 at 21; *Chong*, Dkt. No. 46 at 28. But Plaintiffs can make this argument only by robbing the above-quoted language of its context. The full clause, which Plaintiffs misleadingly truncated, states as follows:

> The Northeastern University Catalog contains current information about the <u>university calendar, admissions, degree requirements, fees, and regulations</u>; however, <u>such information</u> is not intended and should not be regarded to be contractual.

SOF ¶ 52, Andrade Aff. Ex. B (emphasis added). The disclaimer of contractual intent clearly applies only to *certain* aspects of the catalog—the University calendar, admissions information,

degree requirements, fees, and regulations—*not* to the Delivery of Services provision and other policy provisions.

In any case, Plaintiffs' arguments to the contrary would contravene at least two canons of contract construction. First, "[a] contract should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase." *Lexington Ins. Co. v. All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995); *see also Polito v. Sch. Comm. of Peabody*, 69 Mass. App. Ct. 393, 396 (2007) (same). Second, "interpretation should favor a valid and enforceable contract … rather than one of no force and effect." *Lexington*, 419 Mass. at 713; *see also Lafayette Place Assocs. v. Bos. Redevelopment Auth.*, 427 Mass. 509, 517 (1998) (same); *Shayeb v. Holland*, 321 Mass. 429, 432 (1947) (same). Here, the Delivery of Services provision would be meaningless without contractual effect, and rendering "[an] entire provision meaningless … could hardly have been the intent of the parties." *Polito*, 69 Mass. App. Ct. at 396.

In addition, Massachusetts courts regularly hold that force majeure clauses such as the one here are enforceable. *See, e.g.*, *Vantage Travel Serv.*, 444 F. Supp. 3d at 243 (upholding force majeure and limitation of liability clauses to find defendant cruise operator not liable for losses and expenses resulting from mechanical failure); *Cooper v. Charter Comm's., Inc.*, 945 F. Supp. 2d 233, 237 (D. Mass. 2013) (plaintiff's contract claims over failure of cable television service barred by force majeure clause that provided defendant not liable for service interruptions caused by events outside defendant's control), *rev'd on other grounds*, 760 F.3d 103 (1st Cir. 2014); *Baetjer v. New England Alcohol Co.*, 319 Mass. 592, 595 (1946) (upholding clause providing "[s]eller will not be liable for any delay in delivery, or failure to deliver… [if] such delay in delivery, or failure to deliver, is caused by labor troubles, strikes, lockouts, war, riots, insurrection, civil commotion, failure of crops or supplies from ordinary sources, fire, flood, storm, accident or any Act

of God, or other cause beyond Seller's control"); *Nicholas Zeo, Inc. v. Ry. Express Agency, Inc.*, 317 Mass. 374, 375-76 (1944) (upholding limitation of liability clause providing that "[u]nless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage or delay caused by . . . The Act of God."); *Hunter v. Skate III*, No. 9604, 1999 WL 1080326, at *2 (Mass. App. Div. Nov. 23, 1999) (upholding waiver absolving defendant from all liability for any injuries plaintiff sustained while participating in hockey program).

3. The agreement is not unconscionable.

Third, Plaintiffs have argued that the Delivery of Services provision is not binding on graduate students because it is located at the end of the Graduate Catalog.[11] As a preliminary matter, this argument is factually misleading. While it is true that the Delivery of Services provision is located near the back of the PDF version of the Graduate Catalog, on the Graduate Catalog's website version, it is located at the top of the "General Information" page:

[11] *Bahrani*, Dkt. No. 57 at 20; *Chong*, Dkt. No. 46 at 27-28.



Northeastern University
Course Catalog

Search catalog

2019-2020 Edition

PRINT OPTIONS

Home / Graduate / Appendix / General Information

Undergraduate
College of Professional Studies Undergraduate
Graduate
General Admission and Transfer Credit
Information for Entering Students
College Expenses
University-Wide Academic Policies and Procedures
PhD Programs
College of Arts, Media and Design
D'Amore-McKim School of Business
Khoury College of Computer Sciences
College of Engineering
Bouvé College of Health Sciences
School of Law
College of Professional Studies
College of Science
College of Social Sciences and Humanities
Faculty
Appendix
University Leadership
Governing Boards and Officers of Northeastern
Statements of Accreditation and State Authorization

GENERAL INFORMATION

This is an archived copy of the 2019-2020 catalog. To access the most recent version of the catalog, please visit http://catalog.northeastern.edu.

The *Northeastern University Catalog* contains the university's primary statements about approved academic programs and degree requirements, as authorized by the president or the Board of Trustees.

The *Northeastern University Catalog* contains current information about the university calendar, admissions, degree requirements, fees, and regulations; however, such information is not intended and should not be regarded to be contractual.

*Accreditation.* Northeastern University is accredited by the New England Commission of Higher Education, Inc.

*Delivery of Services.* Northeastern University assumes no liability for delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by university employees or others, damage by natural elements, and acts of public authorities. The university will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the university to liability.

Northeastern University reserves the sole right to promulgate and change rules and regulations and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the university will give whatever notice is reasonably practical.

Northeastern University will endeavor to make available to its students a fine education and a stimulating and congenial environment. However, the quality and rate of progress of an individual's academic career and professional advancement upon completion of a degree or program are largely dependent on his or her own abilities, commitment, and effort. In many professions and occupations, there are also requirements imposed by federal and state statutes and regulatory agencies for certification or entry into a particular field. These requirements may change while a student is enrolled in a program and may vary from state to state or country to country. Although the university stands ready to help its students find out about requirements and changes in them, it is the student's responsibility to initiate the inquiry.

SOF ¶ 71.

In any event, Plaintiffs each agreed to abide by either the Undergraduate Student Handbook or the Graduate Catalog, and the policies set forth therein, regardless of their location within the Handbook and Catalog. They certified that they had read and understood the publications that applied to them. SOF ¶¶ 37, 47, 78, 85. They did *not* agree to abide by only some of these policies or only those located at the front of the documents. As Plaintiffs Bahrani and Legget themselves

emphasized,[12] contractual terms must be read as a whole, with each "given effect so far as possible." *Dukes Bridge LLC v. Beinhocker*, 856 F.3d 186, 190 (1st Cir. 2017) (applying Massachusetts law). In addition, Massachusetts explicitly eschews a "conspicuousness" requirement for electronic agreements. *Kauders*, 486 Mass. at 559 n.5. The Delivery of Services provision was plainly part of the policies to which Plaintiffs agreed, regardless of its location.

To vitiate an agreement as unconscionable, the challenging party must prove both procedural and substantive unconscionability. *Machado v. System4, LLC*, 471 Mass. 204, 218 (2015); *see Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 293 (1980) (clause permitting franchise termination without cause not unconscionable). There was no procedural unconscionability here. The SFRA and Handbook/Catalog blocks were placed on each Plaintiff's *myNortheastern* portal before the Spring 2020 semester began and before the opportunity to withdraw at no charge had expired, and (in the case of Messrs. Chong, Gallo, and Legget) before class registration. SOF ¶¶ 32-50, 73-89. There was no restriction on the amount of time students were given to review the handbook and catalog. Indeed, those documents were posted on the Northeastern website and were therefore available for review at any time. SOF ¶¶ 25, 66-69. In addition, the Delivery of Services clause was not "buried" anywhere—it was included under the heading of "General Information," thereby illustrating its likely applicability to all students. The Delivery of Services provision also appeared in the same font size and color as other provisions.

Nor was there any substantive unconscionability. Indeed, it is not surprising that the parties would agree to excuse Northeastern from liability for disruption of certain services due to reasons beyond its reasonable control and allow it, where necessary, to provide substitute services. The

---

[12] *See, e.g., Bahrani*, Dkt. No. 57 at 19.

clause does not create a risk of self-interested misconduct on the University's part because it shields Northeastern from liability only for service interruptions or cancellations "beyond its *reasonable* control." SOF ¶¶ 12, 52 (emphasis added). Northeastern is not suggesting that it could cancel classes on a whim. To the contrary, Northeastern's actions were taken in direct response to "*damage by natural elements*"—the COVID-19 pandemic—and were required by "*acts of public authorities*"—Governor Baker's Essential Services Orders. *See also Desrosiers v. Governor*, 486 Mass. 369 (2020) (upholding governor's authority to issue COVID-19 emergency orders).

Finally, Plaintiffs Chong and Gallo orally argued that the Delivery of Services provision cannot be enforceable because it would allow Northeastern to alter its services at any time, without consequence.[13] But Northeastern's substitution of services in accordance with the Delivery of Services provision is necessarily bounded by the covenant of good faith and fair dealing implied in all Massachusetts contracts. *See Sonoiki v. Harvard Univ.*, No. 19-cv-12172, 2020 WL 3416516, at *14 (D. Mass. June 22, 2020); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 612 (D. Mass. 2016). Here there is no allegation, nor could there be, that Northeastern acted in bad faith to deprive the Plaintiffs of the benefit of their agreements.

### C. The Delivery of Services Provision Bars Plaintiffs' Unjust Enrichment Claims.

The Delivery of Services provision also bars Plaintiffs' unjust enrichment claims. The force majeure clause expressly disclaims *all* liability, thus excluding a claim under any cause of action. SOF ¶¶ 12, 52. Moreover, as this Court previously recognized, a party with an adequate remedy at law—even one that may be unsuccessful—cannot claim unjust enrichment. *Chong v. Northeastern Univ.*, No. 20-10844-RGS, 2020 WL 5847626, at *4 (D. Mass. Oct. 1, 2020). Nor

[13] Transcript, Dec. 3, 2020, at 25 (suggesting that Northeastern "could switch the subject from Calculus for Engineering to Woodworking 101 and there would be no breach").

are litigants permitted "to override an express contract by arguing unjust enrichment." *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006)). Here, although Plaintiffs' contract claims fail, there is little doubt that the particular question at issue—whether or not Northeastern may transition to online classes during a pandemic—falls squarely within the terms of the Delivery of Services clause to which Plaintiffs indisputably agreed. Accordingly, as a matter of law, Plaintiffs cannot recover for unjust enrichment.

**CONCLUSION**

For the foregoing reasons, Defendant Northeastern University respectfully requests that the Court grant its Motion for Summary Judgment.

Respectfully submitted,

NORTHEASTERN UNIVERSITY

By its attorneys,

*/s/ John A. Shope*
John A. Shope, BBO #562056
Rachel C. Hutchinson, BBO # 696739
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
Tel: 617-832-1000
jshope@foleyhoag.com
rhutchinson@foleyhoag.com

*/s/ Victoria L. Steinberg*
Victoria L. Steinberg, BBO #666482
Daniel J. Cloherty, BBO # 565772
Rebecca M. O'Brien, BBO # 693592
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: 617-720-2626
vsteinberg@toddweld.com
dcloherty@toddweld.com
robrien@toddweld.com

Dated: March 3, 2021

**CERTIFICATE OF CONFERENCE**

In accordance with Local Rule 7.1(a)(2), I certify that counsel for Northeastern conferred with counsel for Plaintiffs prior to filing this Motion and the parties were unable to reach agreement.

*/s/ John A. Shope*
John A. Shope

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March 2021, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such to all counsel of record via the CM/ECF system.

*/s/ John A. Shope*
John A. Shope