UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10844-RGS

MANNY CHONG, THANE GALLO, and
ALL OTHERS SIMILARLY SITUATED

v.

NORTHEASTERN UNIVERSITY

---

CIVIL ACTION NO. 20-10946-RGS

MANISHA BAHRANI, DUNCAN LEGGET, and
ALL OTHERS SIMILARLY SITUATED

v.

NORTHEASTERN UNIVERSITY

---

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

May 10, 2021

STEARNS, D.J.

Plaintiffs Manny Chong and Thane Gallo and plaintiffs Manisha Bahrani and Duncan Legget brought putative class actions (civil actions 20-10844 and 20-10946, respectively)[1] against Northeastern University,

---

[1] Because the parties' filings in the two cases are identical, the opinion refers to docket entries from civil action 20-10844, unless otherwise noted.

alleging that Northeastern breached an in-person teaching contract with its students or, alternatively, unjustly enriched itself at its students' expense when it retained the full amount of tuition and fees collected for the Spring semester of 2020, despite ceasing in-person instruction and closing its on-campus facilities and resources. Northeastern moves for summary judgment based on language concerning the delivery of educational services that appears in the handbooks distributed to all Northeastern students. For the following reasons, the court will allow Northeastern's motion.

## BACKGROUND

Students at Northeastern register for classes through an online portal called *myNortheastern*. At the beginning of each academic schoolyear, Northeastern blocks students' access to the *myNortheastern* portal pending the completion of certain enrollment tasks, one of which is called: "Complete Student Handbook and Code of Conduct Requirement." To complete this task (and enable access to *myNortheastern*), a student must click on a "Take Action" button, which loads the following screen (the Portal Block Screen) on the student's device:

## myNortheastern

### Student Handbook and Code of Student Conduct

Listed below are links for the Student Handbook and the Code of Student Conduct, which includes a link to the Academic Integrity policy, and applies to *all enrolled students on and off campus.* Those who violate the Code are subject to sanctions as determined by the Office of Student Conduct and Conflict Resolution. The University community expects all members to hold themselves accountable, individually and collectively, and requires adherence to the standards set forth by the Code.

The list of academic regulations, the Code of Student Conduct, and the Academic Integrity Policy may be found in student handbooks. All students are responsible for knowing the content of their respective handbooks. Physical copies of the Undergraduate Handbook are available at the Information Desk in the Curry Student Center and the Library Reserve Desk.

- Undergraduate Student Handbook
- Graduate Handbook
- Code of Student Conduct

School of Law students should contact the Office of Academic and Student Affairs for their Student Handbook.

By selecting the ACCEPT button below you acknowledge you have been notified of the availability of the Student Handbook, Northeastern's Code of Student Conduct, and the Academic Integrity Policy, have read them, understand their meaning and agree to abide by the policies set forth.

This is a required action to regain access to myNortheastern services.

Accept

Def.'s Statement of Undisputed Material Facts (Def.'s SOF) (Dkt # 67) ¶¶ 20, 60; Pls.' Counterstatement of Facts and Resp. to Def.'s Statement of Undisputed Material Facts (Pls.' SOF) (Dkt # 75-1) ¶¶ 20, 60. Students must click the "Accept" button on the Portal Block Screen to remove the block to *myNortheastern*. The text immediately above that button states that, "[b]y selecting the ACCEPT button below you acknowledge you have been notified of the availability of the Student Handbook, Northeastern's Code of Student Conduct, and the Academic Integrity Policy, have read them, understand their meaning and agree to abide by the policies set forth." Def.'s SOF ¶¶ 21, 61; Pls.' SOF ¶¶ 21, 61. Plaintiffs concede that they clicked the Accept button

on the Portal Block Screen prior to enrolling for classes in the Spring semester of 2020.[2]

The Portal Block Screen contains a hyperlink to the "Undergraduate Student Handbook." Clicking on this hyperlink would bring a student to a page entitled "Code of Student Conduct," which is reproduced below:



Def.'s SOF ¶ 25; Pls.' SOF ¶ 25. From this page, the student could click on "2019-2020 Student Handbook" to obtain a PDF version of the

---

[2] Because Gallo, Chong, and Legget were enrolled at Northeastern for the Fall semester of 2019, their Portal Block for the 2019-2020 academic school year appeared in August of 2019. Because Bahrani began at Northeastern in the Spring semester of 2020, however, her Portal Block did not appear until late December of 2019.

4

undergraduate student handbook.  The following text appears on page 69 of that document:

> DELIVERY OF SERVICES
>
> Northeastern University assumes no liability for the delay or failure in providing educational or other services, programs, or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by University employees or others, damage by natural elements, and acts of public authorities. The University will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the University to liability.
>
> Northeastern University reserves the sole right to promulgate and change rules and regulations, policies, and procedures and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; written materials, including, but not limited to, this handbook; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the University will give whatever notice is reasonably practical.

Def.'s SOF ¶ 29; Pls.' SOF ¶ 29; *see also* Ex. A to Easterbrook Aff. (Dkt #67-14) at 69.

The Portal Block Screen also contains a hyperlink to the "Graduate Handbook."  Clicking on this hyperlink would bring a student to a page

entitled "General Regulations," which was included in the 2019-2020 Graduate Student Catalog. The page is reproduced below:



Def.'s SOF ¶ 66; *see also* Pls.' SOF ¶ 66 (disputing paragraph 66 on other grounds). As stated in the navigation menu on this page, "General Regulations" is a subsection under the heading "University-Wide Academic

6

Policies and Procedures." If a student moved to the "General Information" subsection of the separate "Appendix," the following text would appear:

> *Delivery of Services.* Northeastern University assumes no liability for delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by university employees or others, damage by natural elements, and acts of public authorities. The university will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the university to liability.
>
> Northeastern University reserves the sole right to promulgate and change rules and regulations and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities. In any such case, the university will give whatever notice is reasonably practical.

Def.'s SOF ¶ 52; Pls.' SOF ¶ 52; *see also* Ex. B to Andrade Aff. (Dkt # 67-3) at 520.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence

of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Northeastern argues that the delivery of services language within its Undergraduate Student Handbook and Graduate Catalog "bar[s] [p]laintiffs' contract claims."[3] Def.'s Mem. (Dkt # 66) at 14. But the argument is premised on a student's having entered a binding contract with the university by clicking on the Portal Block Screen, a proposition that plaintiffs reject. The court accordingly will turn first to whether the delivery of services language has contractual force.

---

[3] Northeastern also argues that the tuition refund schedule "prohibits a refund in these circumstances." Def.'s Mem. at 15; *see also id.* at 18. The court rejects its contention. While the Student Financial Responsibility Agreement on which students base their claims incorporates "the published withdrawal refund schedule posted at the Withdrawal/Leave of Absence page," and the Withdrawal/Leave of Absence page in turn purports to limit any tuition refund to which a student is entitled if he or she "withdraw[s] or take[s] a leave of absence from the university," Def.'s SOF ¶¶ 2-4; Pls.'s SOF ¶¶ 2-4, the provision is irrelevant here because none of the plaintiffs withdrew from Northeastern during the Spring semester of 2020.

As the world of commerce has undergone a digital revolution, a body of law has grown up around the phenomenon of the electronic or digitalized contract formed online without any of the personal interaction or bargaining with which common-law contracts traditionally were formed. The Massachusetts courts, for their part, have come to assess the enforceability of an online contract by using "a reasonableness standard, focusing on whether the contract provisions at issue 'were reasonably communicated and accepted.'" *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 571-572 (2021), quoting *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574 (2013). As applied to the delivery of services provision set out in the student handbooks, the court must make the determination (1) that a student was given fair notice that he or she was entering a binding contract by clicking the Accept button on the Portal Block Screen and (2) that he or she reasonably communicated an acceptance of the delivery of services reservation.

Northeastern cannot surmount the first consideration.[4] The Portal Block Screen provides that "[b]y selecting the ACCEPT button below you

---

[4] In the absence of a finding of reasonable notice, the court need not address the issue of acceptance of the delivery of services provision. *See Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 64 (1st Cir. 2018) (noting, as a matter of logical sequence, that "[b]ecause the Plaintiffs were not reasonably notified of the terms of the Agreement, they did not provide their unambiguous assent to those terms"). The court does not, however, believe that acceptance has been shown here. As phrased in the handbook, a student

9

acknowledge you have been notified of the availability of the Student Handbook, Northeastern's Code of Student Conduct, and the Academic Integrity Policy, have read them, understand their meaning and agree to abide by the policies set forth." Def.'s SOF ¶¶ 21, 61; Pls.' SOF ¶¶ 21, 61. The court does not believe that a reasonable student parsing this language would understand that, by clicking "accept," he or she was entering into "a significant contractual relationship" acknowledging Northeastern's unilateral right to alter the terms and conditions under which course instruction would be offered. *Kauders*, 486 Mass. at 579. First, the language itself is ambiguous. *Cf. Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 9 (1st Cir. 2021) (finding reasonable notice met where the user was presented with a screen that explicitly stated she must "accept the revised Independent Contractor Agreement" to be able to continue her application); *Capriole v. Uber Techs., Inc.*, 2020 WL 1536648, at *2, *5 (D. Mass. Mar. 31, 2020) (finding reasonable notice was met where the user was presented with a screen that explicitly stated that he must "agree to" the attached "contracts" to continue). A student was told only that he or she was agreeing to abide by

---

only agreed to "abide by the policies set forth." The delivery of services language does not define a policy by which a third party could be expected to abide but rather a significant limitation on what the student could expect from the school. Seen in this light, the language is important (as will be explained), but not for its contractual import.

university policies without further specification. "Abide" is a word of multiple interpretations. It can mean to accept and act in accordance with a rule, which is likely the sense the University's draftsmen had in mind, but it can equally mean to tolerate, to put up with, or to suffer in silence without yielding or submitting. *Random House Unabridged Dictionary* (2d ed. 1993).

Second, even if the language on the Portal Block Screen could be said to give a student some reason to anticipate the formation of a formal contract, the contents of the handbooks themselves negate any such understanding. The handbooks expressly disclaim any intent to form a mutual (or unilateral) contract of an enforceable nature, a familiar echo of the typical disclaimers found in employee handbooks.[5] *See Jackson v. Action for Boston Cmty. Dev., Inc*, 403 Mass. 8, 14-15 (1988); *see also* Ex. A to Easterbrook Aff.; Ex. B to Andrade Aff. at 520. The delivery of services language at issue in this case, moreover, is buried at the end of the document assembly. *Cf. Dixon v. Michael Kors Retail, Inc.*, 468 F. Supp. 3d 409, 412

---

[5] Even accepting Northeastern's argument that the contractual disclaimer is to "information current as of the date of printing" or "current information about the university calendar, admissions, degree requirements, fees, and regulations," *see* Def.'s Mem. at 18; Def.'s Reply (Dkt # 79) at 9, the court believes that a disclaimer as to a critical subset of information would weigh heavily against any finding that Northeastern intended for the remainder of the handbook to have the force of a contract.

11

(D. Mass. 2020) (concluding that defendants had established "reasonably conspicuous notice of the Arbitration Agreement" where, *inter alia*, "the hyperlink [to the document containing the agreement] took a user directly to a four-page document formatted with short headings summarizing each relevant provision and easily read in its entirety"). It is true that the student-plaintiffs certified that they had reviewed and understood the entire document, but nothing within earlier portions of the various texts can reasonably be said to have directed a student's attention specifically to the delivery of services language. *See Immediato v. Postmates, Inc.*, 2021 WL 828381, at *4 (D. Mass. Mar. 4, 2021) (finding the reasonably conspicuous notice requirement satisfied where "plaintiffs were . . . alerted to the Arbitration Provision by text, in all-capital letters, in the second paragraph of the Fleet Agreement"). Under the circumstances, the court cannot say that a student would have had reason to know that by clicking "accept," he or she was contracting permission for Northeastern to alter or change course offerings at will.

Northeastern alternatively argues that, even if the delivery of services language is not contractual, it nonetheless weighs heavily against any reasonable expectation of in-person instruction or access to on-campus

facilities in the face of a pandemic or other *force majeure*.[6] Def.'s Reply at 3-6. The court finds merit in this contention. Plaintiffs do not dispute that they clicked the Accept button on the Portal Block Screen prior to the start of the Spring semester of 2020, and the website is clear that, in doing so, they "acknowledged" having "been notified of the availability of the Student Handbook, Northeastern's Code of Student Conduct, and the Academic Integrity Policy," having "read them," and having "underst[ood] their meaning."[7] Def.'s SOF ¶¶ 21, 61; Pls.' SOF ¶¶ 21, 61.

---

[6] In contract law, a *force majeure* is an extraordinary event beyond the control of the parties that relieves each of any liability or obligation to perform. *See Black's Law Dictionary* (5th ed. 1979).

[7] The parties appear to dispute whether a graduate student would have understood the student handbook to be the Graduate Catalog as a whole or the specific page linked to on the Portal Block Screen, *i.e.*, the "General Regulations" subsection within the "University-Wide Academic Policies and Procedures" header. *Compare* Def.'s Mem. at 7 n.4, 8-10, *with* Pls.'s Mem. (Dkt # 75) at 2 n.1, 5, 11. But the court does not believe that a reasonable student (particularly one at the graduate level) could find the relevant handbook to be anything other than the Graduate Catalog as a whole. The "Graduate Handbook" hyperlink may take a student to the "General Regulations" page, which falls under an entirely different header from the subsection containing the delivery of services language, but the page itself refers to "all other regulations or limitations included throughout this catalog," implying that the catalog extends beyond "General Regulations." Def.'s SOF ¶ 66; Pls.'s SOF ¶ 66. Moreover, the Portal Block Screen indicates that student handbooks are documents containing "[t]he list of academic regulations, the Code of Student Conduct, and the Academic Integrity Policy," and it is only in the Graduate Catalog as a whole that one finds links to these policies. *See* Pls.'s SOF ¶ 65 n.4 (conceding that the Graduate Catalog "contain[s] references and a link to the Code of Student Conduct and

Plaintiffs' late-blooming contention that they did not read the handbooks is unacceptable for reasons other than litigation opportunism. It has long been the rule, and for an important purpose, that a person who signs an acknowledgement that he or she has read and understands the provisions of a document will be held to their word, however strenuously they may later profess ignorance of the contents of that document. *See Spritz v. Lishner*, 355 Mass. 162, 164 (1969). If the rule were otherwise, the value of an acknowledgement as a tool of commerce would collapse into nothing more than an unenforceable statement of a party's present intent, an undertaking to be freely renounced after the fact at a party's whim or in service of a tactical advantage.

The delivery of services provision in Northeastern's handbooks is unambiguous: it unequivocally reserves the right of the University to "make changes of any nature in its programs . . . and academic schedule" – "including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and other academic activities" – "whenever necessary or desirable." Def.'s SOF ¶¶ 29, 52; Pls.'

---

Academic Integrity Policy," even if they do not actually reproduce the text of these policies).

14

SOF ¶¶ 29, 52. It also expressly disclaims liability for any "delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control." *Id.* Given the clarity of this language, the court does not believe that any reasonable student who professed to have read it (as these plaintiffs did) could have expected that registering for in-person classes and executing the Student Financial Responsibility Agreement would give him or her a contractual right to receive in-person instruction and/or unrestricted access to on-campus facilities and resources.[8] Other courts agree. *See Burt v. Bd. of Trs. of Univ. of Rhode Island*, 2021 WL 825398, at *5 (D.R.I. Mar. 4, 2021) (dismissing a class action for a tuition refund because, even if statements in the university's catalog "could be interpreted as contractual promises" to supply in-person instruction, "all four universities explicitly reserved the right to unilaterally alter the administration of their academic offerings"); *cf. Lindner v. Occidental Coll.*, 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) (dismissing a class action for a tuition refund where, *inter alia*, the university's catalog "reserve[d] the right to change fees, modify its services, or change its program should economic conditions or national

---

[8] And any reliance on a promise to this effect, as is alleged in the unjust enrichment claims, would not be reasonable under the circumstances.

emergency make it necessary to do so."). The court accordingly allows Northeastern's motion for summary judgment.

## ORDER

For the foregoing reasons, the motion for summary judgment is <u>ALLOWED</u>. The clerk will enter judgment in Northeastern's favor on all claims in civil actions 20-10844 and 20-10946 and close both cases.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE